SAMUEL, Judge.
These appeals involve a claim for damages incurred by plaintiff, Dorothy Adams, when she applied an allegedly improperly compounded dermatological prescription to her face. Her petition avers her skin was severely burned and a preexisting skin pigmentation condition aggravated, resulting in facial disfigurement. Named defendants were the owner of the drug store where the prescription was filled, his liability insurer and the pharmacist who compounded the solution.
The defendant owner and his insurer filed a joint answer in which they denied the prescription was improperly filled. Alternatively, they pleaded plaintiff assumed the risk in using a solution designed to cause mild burning. Further in the alternative, they charged her failure to contact her doctor immediately after experiencing the reaction was contributory negligence. These defendants filed a third party demand, for any amount in which they might be cast in judgment, against the pharmacist alleging negligence and against Dr. John Counce, the prescribing physician, claiming the doctor wrote an ambiguous prescription. The pharmacist filed answers denying negligence charged in the original petition and in the third party demand against him. Dr. Counce filed a general denial to the third party demand.
After trial on the merits, the lower court awarded plaintiffs $900, specifying $650 was for pain and suffering to Dorothy Adams and the balance for expert fees expended by the Adams community in the trial of the cause. In written reasons for judgment, the trial court stated he found the disfiguring facial pigmentation was not aggravated by the use of the prescription. On the third party demand, the lower court cast D’Aunoy, the pharmacist who filled the prescription, for any amount the owner and insurer were liable. He dismissed the third party demand against Dr. Counce. All litigants, except the doctor, have appealed.
Plaintiff had a history of facial skin problems prior to the incident complained of in this suit. She first consulted Dr. Grieshaber in 1961 about an acne condition which cleared after six or seven treatments. At that time Dr. Grieshaber testified he noticed a mild chloasma or pigmentation of the face but considered it too slight to require treatment. In 1964 plaintiff consulted Dr. Counce who described *810 her facial problems as acne and chloasma. He thought both conditions required treatment and explained it was necessary to clear up the acne before he could begin medications to lessen or remove the pigmentation. In September, 1964 she visited this dermatologist four times and by the end of the month the acne had cleared sufficiently to permit treatment for chloasma. On October 5, 1964 he wrote a prescription for a solution designed to cause a mild burning and peeling. The purpose was to cause the pigmented layers of skin to be sloughed off when the face peeled. The solution, containing i/¿% bichloride of mercury and 1;% salicylic acid, is frequently used by dermatologists to treat this condition.
Plaintiff had the prescription filled at Anderson’s Pharmacy by the pharmacist then on duty, Earl D’Aunoy. Before going to bed that night she thoroughly cleansed her face and applied the solution as directed. At 3 a. m. the following morning she awakened with a painful burning sensation to her face. She called Dr. Counce at his home between 6 and 7 a. m. the following day, October 6, 1964. When she described her reaction to the solution, he directed her to apply milk to her face and ordered a cream from the same drug store, directing her to use it to soothe the burned area.
Plaintiff testified her face was fiery red, swollen and blistered. She visited Dr. Counce one week later and he found she had suffered first and second degree burns. He advised her to return after the burning subsided to see what further treatment might be required. According to plaintiff the redness did not diminish for eight to nine weeks after the solution had been applied: During this time she took medication to relieve the pain.
Plaintiff testified the most disturbing reaction to this drug was a marked increase in the skin pigmentation. Dr. Counce saw her again on March 11, 1965. He described the progression of the chloasma from mild-to-moderate in October to moderate-to-severe five months later. This dermatologist did not see her again until he appeared for the trial some two years after his last examination. In his opinion the pigmentation had progressed even further during this period.
The record clearly supports the trial court’s finding that the prescription was improperly compounded. It was tested by Shilstone Laboratories and a chemist responsible for the analysis testified the caustic materials in the solution greatly exceed the amount called for in the prescription, i. e., the bichloride of mercury content was 6.56% rather than and the salicylic acid was 4.08% instead of the 1% specified. Further, it is clear plaintiff suffered first and second degree burns to her chin, cheeks and forehead as a result of using the compound.
The factual issue more difficult to resolve is to what degree, if any, did the application of the solution aggravate or accelerate the chloasma or pigmentation. The expert dermatologists all agree chloas-ma sometimes does progress naturally as time passes, or the pigmentation gradually becomes more prominent. But the rate of progression in any individual is not predictable. Some patients have mild chloas-ma which remains static; others experience a progressive worsening of the condition.
In the instant case, plaintiff did experience progression of chloasma between 1961 and 1964. Although she consulted different dermatologists, the first treating physician described the pigmentation in 1961 as too minimal to treat. Three years later, Dr. Counce classified it as mild-to-moderate. Within five months after she applied the solution the progression, according to Dr. Counce, was dramatic in that he rated the pigmentation moderate-to-severe. In this opinion application of the improperly compounded drug accelerated the progression of pigmentation. He admitted it was possible for chloasma to progress at this rate *811 naturally. However, he made it clear that he attributed the rapid acceleration directly to application of the offending- prescription. He stated that “* * * based on the sequence of events and the time involved, it was my impression that she was pigmented, what I call post inflammatory hyperpigmentation as a result of the acute inflammation of the face”. Dr. Grieshaber shared this view. Dr. James Burks, the third expert dermatologist to testify, opined differently. After examining plaintiff once in May, 1965, it was his opinion that use of a solution containing the chemical components detailed in the Shilstone analysis would not aggravate chloasma.
As we review the medical evidence, we find the opinions of Dr. Counce and Dr. Grieshaber more persuasive. Dr. Counce, in particular, viewed her condition immediately before she applied the solution, one week later when the burns were very inflamed, and five months thereafter. Thus, from personal observation he had more complete information upon which to base his evaluation.
The extent of acceleration of the condition directly attributable to use of the solution is not clear. Perhaps it is not susceptible of precise definition. While we are satisfied the solution did accelerate her condition between October, 1964 and March, 1965, there is no evidence whatsoever to establish the cause for the progression thereafter.
Plaintiff produced no lay witnesses to describe the changes to her face between October, 1964 and the time of the trial. Defense counsel asked her to furnish the names of friends or co-workers who had known her prior to 1964, Rather than furnishing the name of any witness who might be readily available, she evaded the questions. Plaintiff’s failure to return to a dermatologist after March, 1965 rules out any further expert evaluation as to the cause of further progression. The permanency of the disfigurement also is an unknown. Dr. Counce testified there was no way to predict how successfully her chloas-ma could be minimized by plastic surgery until she submitted to treatment.
Thus, while we are convinced the drug accelerated the pigmentation,- we must observe plaintiff’s evidence falls far short of establishing the degree of disfigurement she alleges is directly attributable to its use.
When plaintiff’s face was burned she was 29 years old. Without the facial problems, photographs show she is an attractive woman. Considering the seriousness of the burn and the embarrassment it would produce, especially to a woman her age, the high degree of inflammation and pain suffered for eight or nine weeks after it occurred, and the acceleration of a pigmentation condition, on the showing made we are of the opinion the award for pain and suffering, including disfigurement resulting from the burn itself during the eight or nine week period and from the acceleration of the pigmentation during the five month interval, should be increased from $650 to $4,000.
For the reasons assigned, the judgment appealed from is amended only so as to increase the award to plaintiffs from $900 to $4,250 and, on the third party demand, to render judgment in like amount, $4,250, in favor of third party plaintiffs, William Anderson, d/b/a Anderson’s Pharmacy and The American Druggist Insurance Company, and against the third party defendant, Earl D’Aunoy. As thus amended, and in all other respects, the judgment appealed from is affirmed. Defendant, Earl D’Aunoy, is to pay all costs of this appeal.
Amended and affirmed.